## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

Case No. _____

MELANIE M. BERES,

 Plaintiff,

v.

CITY OF WEST PALM BEACH;
PALM BEACH COUNTY; and
WELLPATH LIQUIDATING TRUST, solely as nominal defendant for the liquidation of
Plaintiff's prepetition claims arising from the conduct of the applicable Wellpath debtor entities,

 Defendants.

_____/

FILED BY _____ CDS _____ D.C.

**Jul 27, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff Melanie M. Beres ("Plaintiff"), proceeding pro se, alleges:

### I. INTRODUCTION

1. This is a civil-rights action arising from Plaintiff's arrest, detention, involuntary confinement, and treatment while in custody in Palm Beach County, Florida.

2. Plaintiff alleges violations of: the Fourth Amendment to the United States Constitution; the Fourteenth Amendment to the United States Constitution; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983; and related Florida tort law, including false imprisonment, negligence, gross negligence, and other supplemental state-law claims arising from the same

nucleus of operative facts concerning Plaintiff's arrest, detention, involuntary confinement, disability-accommodation requests, custodial treatment, and resulting injuries and damages.

3. Plaintiff alleges that she was arrested and detained pursuant to judicial process later reversed by the Florida Fourth District Court of Appeal for failure to establish imminent danger under Florida domestic-violence injunction statutes.

4. Plaintiff further alleges that, during detention, she was subjected to punitive suicide-watch conditions, degrading confinement, disability-accommodation failures, and deliberate indifference to serious medical and psychological needs.

5. Plaintiff seeks compensatory damages, declaratory relief, prospective injunctive relief, and all other relief authorized by law.

## II. JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

7. This Court has jurisdiction under 28 U.S.C. § 1343 because this action seeks redress for violations of constitutional and federal civil-rights protections.

8. This Court has supplemental jurisdiction over related Florida-law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Palm Beach County, Florida.

9A. A substantial part of the events, acts, omissions, injuries, detention, medical and mental-health decisions, witnesses, records, and custodial conduct giving rise to Plaintiff's claims

occurred in

Palm Beach County, Florida. Venue is therefore proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2).

9B. Plaintiff's claims concerning the prepetition conduct of the applicable Wellpath debtor entities arose before November 11, 2024. Under the confirmed Wellpath Chapter 11 Plan, the Trust Distribution Procedures, and the Revised and Amended Clarifying Order entered in In re Wellpath SF HoldCo, LLC, Case No. 24-90566, holders of prepetition personal-injury claims may proceed in an appropriate civil court with the Wellpath Liquidating Trust included solely as a nominal defendant to determine liability and liquidate the amount of the claim.

9C. This Court is the appropriate civil court because the claims arose in Palm Beach County, Florida. Plaintiff does not ask this Court to modify, reinterpret, or disregard the confirmed bankruptcy Plan, the Trust Distribution Procedures, the discharge injunction, or any order of the United States Bankruptcy Court for the Southern District of Texas. The Bankruptcy Court retains authority to interpret and enforce those orders and to determine whether Plaintiff may separately proceed against a Wellpath debtor solely to access applicable insurance coverage.

### III. PARTIES

10. Plaintiff Melanie M. Beres is an adult individual currently residing in Wisconsin.

11. Defendant City of West Palm Beach is a Florida municipal corporation responsible for policies, customs, training, supervision, and practices of the West Palm Beach Police Department.

12. Defendant, Palm Beach County is a political subdivision of the State of Florida responsible for operation, oversight, funding, and administration of county detention facilities and related custodial systems.

13. Defendant Wellpath Liquidating Trust ("Trust") was established under the confirmed Chapter 11 Plan in In re Wellpath Holdings, Inc., et al., Case No. 24-90533, United States Bankruptcy Court for the Southern District of Texas. The Trust is named in this action solely as a nominal defendant for purposes of determining liability and liquidating Plaintiff's prepetition claims arising from the conduct of the applicable Wellpath debtor entities. Plaintiff does not allege that the Trust itself committed the conduct occurring in 2024. For purposes of describing the underlying conduct only, "Prepetition Wellpath" means Wellpath Holdings, Inc., Wellpath LLC, the applicable Wellpath debtor affiliate that contracted to provide services at the Palm Beach County Jail, and their personnel, agents, and policymakers before November 11, 2024. Any claim based upon that conduct is asserted against the Trust solely in its nominal capacity and subject to the confirmed Plan and Trust Distribution Procedures.

13A. At all relevant times, Defendant City of West Palm Beach acted through officers, employees, policymakers, and agents responsible for enforcing injunction-related orders, determining whether probable cause existed, communicating with Plaintiff during enforcement events, and responding to disability-related information known or available to City personnel.

13B. At all relevant times, Defendant Palm Beach County was responsible for funding, contracting, oversight, and policymaking functions related to detention services, jail medical and mental-health systems, disability-access procedures, and contracted healthcare services at the Palm Beach County Jail.

13C. At all relevant times, Prepetition Wellpath, directly or through the applicable debtor affiliate, controlled subsidiaries, agents, contracted professionals, or personnel, provided medical and mental-health services to detainees at the Palm Beach County Jail and performed functions within the State's obligation to provide constitutionally adequate medical and mental-health care to detainees.

13D. Prepetition Wellpath's liability is based on its own policies, customs, staffing practices, training practices, supervision practices, suicide-watch protocols, medical-assessment procedures, and cost-control or utilization practices, not solely on respondeat superior.

13E. Plaintiff alleges Prepetition Wellpath performed functions traditionally and exclusively reserved to the State, including provision of constitutionally required medical and mental-health care to detainees in county custody, and therefore acted under color of state law.

13F. Plaintiff alleges that Prepetition Wellpath's policies, staffing practices, utilization management practices, reimbursement structures, contractual obligations, and cost-control practices are relevant to Plaintiff's claims concerning medical decision-making, suicide-watch placement, involuntary confinement practices, adequacy of treatment, supervision, and institutional incentives affecting detainee care.

13G. Plaintiff alleges that Prepetition Wellpath established, implemented, approved, supervised, or enforced policies, staffing models, utilization-management practices, clinical-review procedures, suicide-watch protocols, and mental-health assessment procedures applicable to

detainees housed at the Palm Beach County Jail.

13H. Plaintiff alleges that Prepetition Wellpath personnel participated in medical screening, mental-health assessment, suicide-watch evaluation, monitoring, documentation, treatment decisions, referral decisions, transfer-related communications, and other custodial healthcare functions concerning Plaintiff.

13I. Plaintiff alleges that Prepetition Wellpath personnel participated in, approved, implemented, monitored, continued, documented, recommended, or failed to intervene in suicide-watch restrictions, mental-health-related confinement decisions, and treatment-related decisions affecting Plaintiff.

13J. Plaintiff alleges that Prepetition Wellpath knew or reasonably should have known that Plaintiff denied suicidal intent, disputed the need for involuntary mental-health intervention, presented trauma-related symptoms, and required individualized clinical assessment and reasonable accommodation.

13K. Plaintiff alleges that Prepetition Wellpath's policies, customs, staffing practices, training practices, supervision practices, utilization-management practices, and clinical procedures were a moving force behind the constitutional, statutory, and state-law violations alleged herein.

13L. Plaintiff alleges that discovery is expected to reveal additional communications, assessments, suicide-risk evaluations, referral records, transfer documentation, medical notes, utilization-review records, staffing records, training materials, contracts, policies, procedures, and other records generated or maintained by Prepetition Wellpath concerning Plaintiff's suicide-watch placement, mental-health status, confinement, treatment, and transfer for involuntary psychiatric evaluation. The Trust is named solely as the nominal defendant through

which Plaintiff seeks to determine  liability and liquidate claims arising from this prepetition conduct.

13M. On May 1, 2025, the United States Bankruptcy Court for the Southern District of Texas confirmed the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and certain debtor affiliates in Case No. 24-90533. The Plan became effective on May 9, 2025 and  established the Wellpath Liquidating Trust to address general unsecured claims, including qualifying prepetition personal-injury claims.

13N. On January 25, 2026, the Bankruptcy Court entered a Revised and Amended Clarifying Order  in Case No. 24-90566. That order permits holders of prepetition personal-injury claims to litigate  in an appropriate civil court with the Trust included solely as a nominal defendant. The order does  not permit a claimant to proceed against a reorganized Wellpath debtor, including Wellpath LLC,  in any capacity unless the Bankruptcy Court separately authorizes the debtor's inclusion for the  purpose of obtaining applicable insurance coverage.

13O. Plaintiff therefore names the Trust solely as nominal defendant. Plaintiff seeks through this action to establish the liability attributable to Prepetition Wellpath's alleged conduct and to liquidate the amount of Plaintiff's prepetition claims for treatment under the Plan, Trust Distribution Procedures, and any applicable insurance authorized by the Bankruptcy Court.

13O-1. Plaintiff filed Proof of Claim No. 342 against Wellpath Holdings, Inc., in the Wellpath bankruptcy proceedings, asserting an unliquidated claim in the stated amount of $12,000,000.00. The proof of claim remains disputed and unliquidated. Plaintiff does not allege that the stated amount has been allowed, adjudicated, or determined to be recoverable. This civil action seeks to determine liability and liquidate compensable damages, subject to the bankruptcy Plan, Trust

Distribution Procedures, applicable defenses, and any insurance coverage authorized by the Bankruptcy Court.

13P. Plaintiff reserves the right to request an order from the Bankruptcy Court permitting the applicable Wellpath debtor to be named solely for purposes of pursuing insurance proceeds if evidence establishes that applicable insurance coverage exists and that either no self-insured retention applies or Plaintiff's claim will exceed the applicable self-insured retention. Until such relief is entered, Plaintiff does not name or seek personal recovery from any discharged or post restructuring Wellpath debtor.

13Q. Palm Beach County's alleged liability remains independent and is based upon the County's own policies, customs, contracting decisions, oversight failures, detention practices, disability accommodation obligations, custodial duties, and jail-related conduct. The County's liability does not depend upon whether Plaintiff ultimately receives a Trust distribution or insurance recovery arising from Prepetition Wellpath's conduct.

## IV. FACTUAL ALLEGATIONS

### A. Injunction Proceedings

14. In or about February 2024, domestic-violence injunction proceedings occurred in Palm Beach County, Florida.

15. Plaintiff alleges the injunction proceedings lacked legally sufficient evidence establishing imminent danger as required under Florida law.

16. Plaintiff alleges the injunctions later became the basis for arrest-related enforcement actions against her.

17. On February 12, 2025, the Florida Fourth District Court of Appeal reversed the injunctions, issuing its mandate on March 5, 2025, and the trial court later entered an order vacating the injunctions after concluding the evidence failed to establish imminent danger.

17A. In late 2024, the State declined to proceed further with the criminal prosecution arising from the alleged injunction-violation allegations, and the criminal case was dismissed without conviction, adjudication of guilt, or trial.

18. Plaintiff alleges the injunction proceedings and related enforcement actions caused continuing restraints upon her liberty, movement, and property access.

18A. On March 1, 2024, Plaintiff contacted the Florida Department of Children and Families ("DCF") seeking voluntary assistance concerning escalating family conflict involving her then minor son. Plaintiff reported concerns that her son was being exposed to ongoing emotional conflict and disparaging statements concerning Plaintiff, which Plaintiff believed were negatively affecting the child's emotional well-being and relationship with her. Plaintiff requested supportive services, family intervention, and conflict-stabilization assistance intended to protect her son's welfare and family stability. Plaintiff sought assistance and support, not criminal enforcement or punitive action against herself or her child.

18B. Later that day, a DCF investigator arrived at Plaintiff's residence accompanied by a West Palm Beach Police Department officer. Plaintiff informed them that her husband and son were not present because they were together at work. Plaintiff requested that they return later that day when family members would be available and explained that she was uncomfortable being alone

with a DCF investigator and police officer without another adult witness present. Plaintiff also explained that her son's bedroom was locked and that her son possessed the key because he was not present at the residence.

18C. Plaintiff alleges that this request was characterized as non-cooperation despite the visit being unannounced, the minor child being unavailable, the absence of any apparent emergency circumstances, and Plaintiff's offer to facilitate contact later the same day.

18D. Plaintiff alleges that body-worn-camera footage reflects that the DCF investigator and responding officer subsequently spoke with family members outside Plaintiff's presence and accepted statements from individuals who were already involved in ongoing family disputes. Plaintiff further alleges that assumptions concerning Plaintiff's emotional condition, credibility, or stability were discussed or entertained without any contemporaneous clinical evaluation.

18E. Plaintiff possesses body-worn-camera footage obtained through public-records requests showing that, during the March 1, 2024 interaction at or near 835 31st Street, West Palm Beach, Florida, West Palm Beach Police Officer Joshua Ballesteros interrupted, deactivated, muted, or otherwise ceased active body-worn-camera recording during a discussion with the DCF investigator concerning Plaintiff, Plaintiff's family circumstances, Plaintiff's relationship status, and potential enforcement-related actions.

18F. Plaintiff alleges that immediately before the interruption, the DCF investigator referenced Plaintiff and Plaintiff's husband "still being together," after which Officer Ballesteros stated words to the effect of "one sec" and the recording ceased or was interrupted.

18G. Plaintiff alleges that the interruption occurred during a discussion relevant to later injunction proceedings, mental-health-related allegations, probable-cause determinations, arrest

decisions, Baker Act-related actions, and credibility assessments concerning Plaintiff. Plaintiff further alleges that the interruption is relevant to issues of investigative neutrality, narrative formation, disability related assumptions, supervisory oversight, and the sequence of events preceding Plaintiff's later arrest, detention, suicide-watch placement, and involuntary confinement.

18H. Plaintiff alleges that West Palm Beach Police Department policy recognizes body-worn camera footage as evidence of law-enforcement interactions, actions, conditions, and statements and generally requires activation during law-enforcement activity. Plaintiff alleges that the interruption or deactivation of recording during a material DCF and law-enforcement discussion is relevant to issues of City policy, training, supervision, retention practices, and investigative integrity.

18I. Plaintiff alleges that body-worn-camera footage obtained through public-records requests reflects a February 24, 2024 discussion between responding officers and Plaintiff's daughter, Raven Beres-Peterson, concerning the injunction and Plaintiff's alleged presence at the residence. Plaintiff alleges that an officer stated words to the effect that Plaintiff was not present at the residence at that time and questioned how an arrest could occur under those circumstances. Plaintiff further alleges that the officer expressed uncertainty concerning the interaction between the injunction restrictions and Plaintiff's asserted ownership interest in the property. Plaintiff alleges that the discussion is relevant to the existence of ambiguity concerning enforcement of the injunction and the circumstances leading to Plaintiff's later arrest.

18J. Plaintiff alleges that body-worn-camera footage further reflects that, rather than conducting a neutral child-welfare investigation, the responding DCF investigator and law-enforcement

personnel accepted and relied upon statements from Plaintiff's husband, Scott Peterson, and Plaintiff's children without conducting a reasonably impartial investigation or adequately considering Plaintiff's explanations or available documentary evidence. Plaintiff alleges that the investigation became focused on confirming preexisting assumptions regarding Plaintiff's mental health rather than objectively determining the underlying facts.

18K. Plaintiff alleges the body-worn-camera footage reflects statements by the DCF investigator indicating that, after speaking with Plaintiff for only a brief period, the investigator concluded that Plaintiff was "crazy" or words to that effect. Plaintiff alleges such statements demonstrate that conclusions regarding Plaintiff's credibility and mental condition were reached before a complete investigation was conducted and before any qualified clinical evaluation had occurred.

18L. Plaintiff further alleges that the body-worn-camera footage reflects conversations between DCF personnel, responding officers, Plaintiff's husband Scott Peterson, and Plaintiff's children concerning obtaining or enforcing injunction-related relief against Plaintiff. Plaintiff alleges these communications occurred outside Plaintiff's presence and that officers and investigators relied heavily upon one side of an ongoing family dispute while giving inadequate consideration to Plaintiff's contrary evidence and explanations.

18M. Plaintiff alleges that Scott Peterson repeatedly communicated with law enforcement and DCF personnel regarding Plaintiff's alleged mental instability, advised others not to rely upon Plaintiff's designated representative, and encouraged further enforcement actions against Plaintiff. Plaintiff alleges these statements, together with similar statements made by Plaintiff's children, were accepted without reasonable corroboration and substantially influenced subsequent investigative, arrest, and mental-health-related decisions.

18N. Plaintiff alleges that, although Scott Peterson reported that Plaintiff attempted to lock him out of the residence by changing the locks, Plaintiff possessed contemporaneous text messages advising Scott Peterson that the locks had been changed for security reasons and instructing him to retrieve the new key after work. Plaintiff alleges officers failed to meaningfully investigate or give appropriate consideration to this contemporaneous evidence before accepting contrary accusations.

## B. March 1, 2024 Arrest

19. On or about March 1, 2024, Plaintiff was arrested in West Palm Beach, Florida for alleged violation of injunction-related orders.

20. Plaintiff alleges the arrest lacked lawful probable cause.

20A. Plaintiff alleges the arrest lacked probable cause because the alleged injunction violation was  not supported by facts showing a knowing, intentional, and willful violation of a clear enforceable  restriction, particularly where Plaintiff alleges ambiguity concerning her deeded residence, lack of

meaningful notice of material restrictions, and prior officer recognition that clarification was needed.

20B. Plaintiff alleges that information known or reasonably available to officers at the time of arrest included facts demonstrating substantial ambiguity concerning Plaintiff's right to access the residence, Plaintiff's ownership and possessory interests in the property, the scope and application of the injunction, and whether Plaintiff's conduct constituted an enforceable violation. Plaintiff further alleges that, approximately one week before the arrest, responding West Palm Beach

police officers discussed these issues with Plaintiff's daughter, Raven Beres-Peterson, reviewed the circumstances presented, and determined they did not have sufficient information to effect an arrest. Plaintiff further alleges that officers expressed uncertainty concerning enforcement of the injunction where Plaintiff owned the property and the protected person was not present, and recommended that clarification be sought from the issuing court before enforcement. Plaintiff alleges that these circumstances were known or reasonably available to Defendant City through its officers, records, communications, or departmental systems before Plaintiff's March 1, 2024 arrest.

20C. Plaintiff alleges that prior responding officers recognized ambiguity regarding enforcement of the injunction and did not arrest Plaintiff under materially similar circumstances. Plaintiff alleges that this prior law-enforcement response is relevant to the objective reasonableness of the later probable-cause determination, the adequacy of the investigation preceding Plaintiff's arrest, and Defendant City's training, supervision, and enforcement practices concerning injunction related arrests.

20D. Plaintiff alleges that after being placed under arrest on March 1, 2024, officers questioned her while she was in custody without first advising her of her rights under Miranda v. Arizona. Plaintiff possesses body-worn-camera footage reflecting the arrest and the absence of any Miranda advice before custodial questioning. Plaintiff alleges this evidence is relevant to the circumstances of the arrest, the reliability of any statements attributed to Plaintiff, the officers' conduct, and the overall sequence of events leading to her detention and prosecution.

21. Plaintiff was transported to the Palm Beach County Jail.

21A. At all times relevant to the confinement conditions alleged herein, Plaintiff was a pretrial detainee and had not been convicted of the alleged offenses underlying her detention.

22. Plaintiff alleges she was removed from property she lawfully occupied or owned.

23. Plaintiff alleges the arrest and detention caused emotional distress, humiliation, and loss of liberty.

## C. Suicide-Watch Placement

24. After intake into the Palm Beach County Jail, Plaintiff was placed on suicide watch. 25. Plaintiff alleges she was not suicidal.

25A. Plaintiff alleges jail personnel placed her under involuntary mental-health status while detained at the Palm Beach County Jail on about March 1, 2024.

25B. Plaintiff alleges records associated with the detention stated that Plaintiff was placed under involuntary status pursuant to the Baker Act.

25C. Plaintiff alleges the involuntary designation itself did not establish that Plaintiff actually posed a substantial danger to herself or others under applicable statutory standards.

26. Plaintiff alleges she was placed on suicide watch without adequate clinical assessment or lawful justification.

27. Plaintiff alleges she was required to remove all clothing.

28. Plaintiff alleges she was denied normal bedding and clothing.

29. Plaintiff alleges she was placed in unsanitary confinement conditions involving exposure to urine, feces, and biohazard conditions.

30. Plaintiff alleges she was exposed to extreme cold while deprived of adequate covering.

31. Plaintiff alleges the conditions caused humiliation, trauma, emotional distress, and worsening psychological symptoms.

32. Plaintiff alleges Defendants knew or should have known of Plaintiff's documented trauma related conditions and psychological vulnerabilities.

32A. Plaintiff alleges jail and medical personnel had actual or constructive knowledge of her disability-related vulnerabilities because Plaintiff's presentation, medical history, intake information, trauma symptoms, and trauma-related distress, medical vulnerabilities, and requests for evaluation or assistance were apparent or available during intake.

32B. Plaintiff alleges no individualized clinical facts justified forced nudity, deprivation of normal bedding, exposure to cold, or confinement in unsanitary conditions.

32C. Plaintiff alleges these conditions were not reasonably related to a legitimate safety purpose and were excessive in relation to any claimed security or medical purpose.

### D. Medical and Psychological Conditions

33. Plaintiff had known medical and psychological conditions, including trauma-related impairments.

34. Plaintiff alleges Defendants failed to reasonably accommodate those conditions and that Defendants failed to provide constitutionally adequate medical, trauma-informed, and mental

health-related evaluation and care.

34A. Plaintiff alleges Defendants were aware, or reasonably should have been aware, of Plaintiff's disability-related limitations, trauma-related symptoms, medical vulnerabilities, mobility limitations, and requests for accommodation through Plaintiff's communications, observable condition, medical records, hospital documentation, court filings, and custodial interactions.

35. Plaintiff alleges Defendants knew or reasonably should have known that Plaintiff had documented trauma-related conditions, anxiety-related symptoms, cognitive-processing limitations, mobility limitations, chronic pain conditions, ongoing severe dental infection requiring treatment and surgical intervention, and other medical vulnerabilities requiring trauma-informed and non-punitive intervention. Plaintiff alleges such information was available through Plaintiff's communications, observable condition, intake interactions, medical documentation, hospital records, provider communications, and custodial observations. Plaintiff further alleges Defendants failed to reasonably accommodate those conditions and instead subjected Plaintiff to punitive and degrading suicide-watch restrictions without adequately considering less restrictive alternatives, voluntary evaluation, de-escalation measures, or trauma-informed care practices. Plaintiff further alleges that available medical and provider records reflected longstanding trauma-related symptoms, anxiety-related impairment, chronic pain, cognitive-related symptoms, fatigue, and functional limitations, but did not establish contemporaneous suicidal intent or violent behavior requiring the extreme restrictions imposed.

35A. Plaintiff alleges the available records did not adequately explain why less restrictive alternatives, voluntary evaluation, or reasonable accommodations were allegedly insufficient.

35B. Plaintiff alleges Defendants failed to adequately consider less restrictive alternatives, voluntary treatment options, de-escalation measures, trauma-informed intervention, or reasonable accommodations before imposing involuntary confinement and suicide-watch restrictions.

36. Plaintiff alleges the suicide-watch placement functioned as punitive confinement rather than therapeutic intervention.

### E. Alleged Custodial Trauma

37. While incarcerated, Plaintiff alleges she witnessed violent conduct involving another detainee.

37A. While confined in the jail, Plaintiff alleges she witnessed a violent incident involving another young adult female detainee, whom Plaintiff believed to be more than 6 months pregnant. Plaintiff alleges she observed correctional personnel using force against the detainee during late-night hours while Plaintiff was confined in her cell and looking through the cell door window.

37B. Plaintiff alleges the detainee was screaming for help, appeared to be struggling or fighting and sounded as though she was in severe distress and fear for her life during the incident. Plaintiff further alleges Plaintiff herself began screaming for the personnel to stop.

37C. Plaintiff alleges the incident appeared extremely violent and traumatic, and Plaintiff believed the detainee was seriously injured based on what Plaintiff personally observed. Plaintiff further alleges she observed correctional personnel remove the detainee from the area after the incident.

38. Plaintiff alleges the incident caused severe psychological distress, fear, trauma symptoms, nightmares, and worsening emotional and psychological injury during and after confinement.

39. Plaintiff alleges the event worsened her preexisting trauma-related conditions.

## F. Baker Act Detention

40. Following release from jail, Plaintiff was subjected to involuntary Baker Act detention.

40A. Plaintiff alleges that, on or about March 2, 2024, a licensed psychiatric professional identified in records as Kathy Nicholls, PsyD, authorized Plaintiff's transfer from the Palm Beach County Jail to Neurobehavioral Hospital for further observation under the Baker Act.

40B. Plaintiff alleges that the Baker Act transfer followed jail suicide-watch placement and involuntary mental-health status while she remained in custody. Plaintiff further alleges that information, assessments, observations, documentation, communications, recommendations, or records generated by jail medical and mental-health personnel were relied upon in connection with  Plaintiff's continued suicide-watch status and transfer for involuntary psychiatric examination.

40C. Plaintiff alleges the records available to her do not identify specific contemporaneous conduct  showing that Plaintiff had made threats, attempts, or recent acts demonstrating a substantial  likelihood of serious bodily harm to herself or others in the near future.

40D. Plaintiff alleges the Baker Act criteria were not satisfied because the available records do not  identify specific facts showing that because of an alleged mental health condition, Plaintiff refused  or was unable to determine the need for voluntary examination and posed the required near-term  risk of serious bodily harm to herself or others.

40E. Plaintiff alleges that the records available to her do not identify any specific contemporaneous act, threat, attempt, statement, or objectively documented conduct demonstrating that Plaintiff presented a substantial likelihood of causing serious bodily harm to herself or others in the near future. Plaintiff further alleges that the available records do not identify video evidence, witness statements, law-enforcement observations, clinical observations, or other contemporaneous evidence establishing the statutory criteria required for involuntary examination.

40F. Plaintiff alleges that the Certificate of Professional Initiating Involuntary Examination contains conclusory statements but does not identify specific recent acts, behavior, threats, or attempts demonstrating the degree of imminent danger contemplated by section 394.463, Florida Statutes. Plaintiff therefore disputes that the certificate, standing alone, establishes the factual basis for continued involuntary confinement.

41. Plaintiff alleges the statutory prerequisites for involuntary examination under Fla. Stat. § 394.463 were not satisfied.

42. Plaintiff alleges she did not present a substantial danger to herself or others.

43. Plaintiff alleges the involuntary detention caused additional deprivation of liberty and emotional harm.

43A. Plaintiff does not seek appellate review of state-court judgments. Plaintiff instead seeks damages and relief for independent constitutional, statutory, and custodial injuries allegedly arising from Defendants' conduct.

### G. August 1, 2024 Enforcement Events

44. In or about June 2024, Plaintiff temporarily returned to Florida and stayed in an apartment while attempting to resolve ongoing legal proceedings, housing instability, and related family court matters arising from the injunction and criminal-related proceedings. Plaintiff otherwise primarily resided in Wisconsin during portions of the relevant period and experienced medical, financial, transportation, and housing limitations.

45. Plaintiff alleges that during a prior virtual court proceeding, Judge Lauren Burke advised Plaintiff that Plaintiff could request rescheduling or accommodation if necessary concerning a later in-person hearing scheduled for July 29, 2024.

46. Approximately two days before the scheduled hearing, Plaintiff sustained an ankle injury, sought emergency medical treatment at HCA Florida JFK Hospital, and was diagnosed with a right ankle sprain with activity restrictions.

47. After returning from the hospital, Plaintiff filed a motion requesting a continuance, stay, rescheduling, virtual appearance, or other accommodation based on her medical condition and mobility limitations. Plaintiff also contacted the judicial clerk's office and left a voicemail advising of the injury, hospital visit, and filed request. Plaintiff alleges she attempted in good faith to communicate her medical limitations and request accommodation before the scheduled hearing and resulting enforcement actions.

47A. Plaintiff alleges no ruling, response, or accommodation was communicated to Plaintiff before further enforcement actions occurred. Plaintiff further alleges that, after Plaintiff failed to appear at the scheduled in-person proceeding while experiencing the previously described

medical limitations, the state court ordered forfeiture of Plaintiff's bond and later issued further enforcement-related process.

47B. Plaintiff alleges she was later arrested in connection with those proceedings, remained incarcerated for several days after the arrest occurred immediately before a weekend, and suffered additional emotional distress, trauma, financial harm, reputational injury, and worsening psychological symptoms.

## H. Ongoing Harm

48. Plaintiff alleges ongoing emotional distress, anxiety, trauma symptoms, reputational harm, and loss of liberty arising from the events alleged.

49. Plaintiff alleges continuing trauma-related emotional injury requiring ongoing support, therapy, and treatment.

50. Plaintiff alleges the conditions of confinement exacerbated her trauma-related conditions.

## V. CAUSES OF ACTION

## COUNT I

## Fourth Amendment — Unlawful Seizure

## 42 U.S.C. § 1983

## Against Defendant City of West Palm Beach

51. Plaintiff incorporates by reference Paragraphs 14–23, 48–50, 93–98I, and 116–122 solely for

purposes of this Count.

52. The Fourth Amendment protects against unreasonable seizure and arrest without probable cause.

53. Defendant City of West Palm Beach, acting through its officers and agents, caused Plaintiff to be arrested and detained.

54. Plaintiff alleges the arrest lacked lawful probable cause.

55. Plaintiff alleges the arrest relied upon legally deficient injunction-related enforcement. 56. Plaintiff alleges the resulting seizure was objectively unreasonable.

56A. Plaintiff does not seek to impose liability upon Defendant City of West Palm Beach based solely on respondeat superior. Plaintiff alleges that the unlawful seizure resulted from, and was caused by, the City's own policies, customs, practices, failures to train, failures to supervise, and ratification concerning enforcement of ambiguous injunction-related orders, probable-cause determinations, body-worn-camera practices, and investigative practices, as alleged in Paragraphs 93 through 98I, which are incorporated into this Count.

57. As a direct and proximate result of the unlawful seizure and arrest alleged herein, Plaintiff suffered loss of liberty, emotional distress, humiliation, reputational harm, disruption of housing and family stability, financial losses, trauma-related injury, and other compensatory damages, including continuing psychological and emotional harm associated with arrest, detention, and related enforcement actions.

## COUNT II

### Fourth Amendment — Malicious Prosecution

### 42 U.S.C. § 1983

### Against Defendant City of West Palm Beach

58. Plaintiff incorporates Paragraphs 14–23, 48–50, 93–98I, and 116–122 as though fully set forth herein, solely for the purposes of this Count.

59. Defendant City of West Palm Beach initiated or continued criminal proceedings against Plaintiff.

60. Plaintiff alleges the proceedings lacked probable cause.

61. Plaintiff alleges the proceedings terminated favorably to Plaintiff through appellate reversal and related proceedings.

62. Plaintiff alleges the prosecution caused continued seizure and restriction of liberty.

63. As a direct result, Plaintiff suffered damages including emotional distress, loss of liberty, and reputational injury.

63A. Plaintiff's Fourth Amendment malicious-prosecution claim is based upon alleged unreasonable seizure and continued deprivation of liberty pursuant to legal process, including arrest, criminal prosecution, bond conditions, no-contact restrictions, warrant-related enforcement actions, and related custodial restraints allegedly initiated or continued without constitutionally adequate legal foundation. Plaintiff further alleges the proceedings terminated in her favor

without conviction, adjudication of guilt, or trial. Plaintiff alleges these claims are consistent with Manuel v. City of Joliet, 580 U.S. 357 (2017), which recognized that the Fourth Amendment governs claims challenging unlawful pretrial detention and continued seizure pursuant to legal process unsupported by probable cause, and Thompson v. Clark, 596 U.S. 36 (2022), which held that a plaintiff asserting a Fourth Amendment malicious-prosecution claim under 42 U.S.C. § 1983 need only show that the criminal prosecution ended without conviction and need not affirmatively prove actual innocence.

63B. Plaintiff does not seek to impose liability upon Defendant City of West Palm Beach based solely on respondeat superior. Plaintiff alleges that the initiation and continuation of the proceedings resulted from, and were caused by, the City's own policies, customs, practices, failures to train, failures to supervise, and ratification, as alleged in Paragraphs 93 through 98I, which are incorporated into this Count.

## COUNT III

### Fourteenth Amendment — Conditions of Confinement

### 42 U.S.C. § 1983

### Against Palm Beach County and Wellpath Liquidating Trust, solely as nominal defendant for Prepetition Wellpath's conduct

64. Plaintiff incorporates Paragraphs 24–39, 48–50, and 116–122 as though fully set forth herein, solely for the purposes of this Count.

64A. This Count is asserted against Palm Beach County for its own alleged conduct and against the Trust solely as nominal defendant for liability arising from Prepetition Wellpath's alleged

policies, customs, decisions, and conduct. Plaintiff does not allege that the Trust itself committed the acts occurring in 2024.

65. Plaintiff was a pretrial detainee entitled to constitutionally adequate confinement conditions.

66. Plaintiff alleges Defendants subjected her to degrading and punitive confinement conditions.

67. Plaintiff alleges Defendants exposed her to unsanitary biohazard conditions.

68. Plaintiff alleges Defendants subjected her to forced nudity and deprivation of adequate bedding and clothing.

69. Plaintiff alleges the conditions were objectively unreasonable and excessive.

70. Plaintiff alleges the conditions caused physical and psychological harm.

71. As a direct result, Plaintiff suffered injury and damages.

71A. Plaintiff's conditions claim arises under the Fourteenth Amendment because she was a pretrial detainee.

71B. Plaintiff alleges the conditions of confinement, suicide-watch measures, restrictions, and treatment imposed upon her were punitive, excessive, degrading, and objectively unreasonable in relation to any legitimate governmental, custodial, medical, or safety objective. Plaintiff further alleges the challenged conditions were not reasonably related to legitimate security, suicide prevention, medical, or institutional needs and instead imposed unnecessary physical,

psychological, emotional, and dignitary harm upon a pretrial detainee who had not been convicted of the alleged offenses underlying her detention.

71C. Plaintiff alleges the conditions included prolonged isolation, deprivation of basic privacy and dignity, forced exposure while using the toilet, inadequate bedding and sanitation-related conditions, excessive monitoring measures, humiliation, trauma-inducing confinement practices, and failure to reasonably accommodate Plaintiff's disability-related and mental-health-related needs. Plaintiff further alleges the conditions caused worsening trauma symptoms, emotional distress, humiliation, fear, sleep disruption, and psychological injury.

71D. Plaintiff alleges these conditions violated clearly established constitutional protections applicable to pretrial detainees under the Fourteenth Amendment and were inconsistent with the principles recognized in Bell v. Wolfish, 441 U.S. 520 (1979), which prohibits punitive conditions unrelated to legitimate governmental objectives, and Kingsley v. Hendrickson, 576 U.S. 389 (2015), which applies an objective-reasonableness standard to challenged treatment and force involving pretrial detainees.

## COUNT IV

### Deliberate Indifference to Serious Medical Needs

### 42 U.S.C. § 1983

### Against Palm Beach County and Wellpath Liquidating Trust, solely as nominal defendant for Prepetition Wellpath's conduct

72. Plaintiff incorporates Paragraphs 24–43, 48–50, and 116–122 as though fully set forth herein,

solely for the purposes of this Count.

72A. This Count is asserted against Palm Beach County for its own alleged conduct and against the Trust solely as nominal defendant for the alleged prepetition conduct of Prepetition Wellpath and its personnel.

73. Plaintiff had serious medical, trauma-related, and mental-health-related needs.

74. Defendants knew or should have known of Plaintiff's trauma-related conditions and vulnerabilities.

75. Plaintiff alleges Defendants failed to provide adequate evaluation, treatment, monitoring, and accommodation.

76. Plaintiff alleges Defendants misused suicide-watch protocols without adequate clinical basis.

77. Plaintiff alleges Defendants acted with deliberate indifference or objective unreasonableness toward known risks to Plaintiff's health and safety.

78. As a direct result, Plaintiff suffered worsening trauma symptoms, emotional distress, and injury.

## COUNT V

### Americans with Disabilities Act — Title II

### Against City of West Palm Beach and Palm Beach County

79. Plaintiff incorporates Paragraphs 34=35B, 44=47B, 48=50, and 116=122 as fully set forth herein, solely for purposes of this Count.

80. Plaintiff is a qualified individual with disabilities within the meaning of the

ADA.

81. Defendants are public entities subject to Title II of the ADA.

82. Plaintiff alleges Defendants failed to provide reasonable accommodations and reasonable modifications related to Plaintiff's medical, mobility, trauma-related, and disability-related limitations.

83. Plaintiff alleges Defendants failed to adequately address medical-emergency notifications and accommodation requests.

84. Plaintiff alleges Defendants denied Plaintiff meaningful and equal access to court-related proceedings, custodial services, medical care, accommodation processes, and safe non discriminatory detention conditions by reason of disability, perceived disability, medical limitations, trauma-related conditions, and disability-related assumptions or stereotypes.

85. Plaintiff alleges Defendants acted with deliberate indifference to federally protected rights.

86. As a direct result, Plaintiff suffered denial of meaningful access, loss of liberty, humiliation, worsening medical and functional limitations, out-of-pocket losses, and other damages and equitable injuries recoverable under law.

86A. Plaintiff seeks ADA relief to the extent available for denial of meaningful access, failure to reasonably modify policies, and disability discrimination in public services, programs, and activities.

86B. Plaintiff alleges Defendants failed to make reasonable modifications to policies, practices, or procedures necessary to avoid disability discrimination and to provide Plaintiff meaningful and equal access to court-related, custodial, medical, mental-health, and detention-related services, programs, activities, communications, and decision-making processes. Plaintiff further alleges that Defendants failed to reasonably accommodate known disability-related limitations and failed to

implement modifications necessary to ensure effective participation, meaningful access, and nondiscriminatory treatment under the circumstances presented.

## COUNT VI

### Rehabilitation Act — Section 504

### Against Palm Beach County and Wellpath Liquidating Trust, solely as nominal defendant for Prepetition Wellpath's conduct

87. Plaintiff incorporates Paragraphs 24–43, 48–50, and 116–122 as though fully set forth herein, solely for the purposes of this Count.

87A. The Rehabilitation Act allegations concerning receipt of federal financial assistance and the challenged conduct relate to Prepetition Wellpath and the applicable federally assisted program or activity. The Trust is named solely as the nominal defendant.

88. Plaintiff is an individual with disabilities within the meaning of Section 504. 89.

Defendants operated programs or activities receiving federal financial assistance.

89A. Plaintiff alleges Palm Beach County and Prepetition Wellpath, directly or through affiliated

entities, contractors, subsidiaries, reimbursement systems, grant programs, correctional-health contracts, Medicaid-related funding mechanisms, federal detention-related funding streams, healthcare reimbursement programs, or other federally assisted programs or activities, received and/or administered federal financial assistance during the relevant period. Plaintiff further alleges that the jail medical, mental-health, disability-accommodation, intake, suicide-watch, and custodial-health services at issue were operated as programs or activities receiving federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff alleges Defendants therefore were subject to the Rehabilitation Act's prohibitions against disability discrimination, exclusion from participation, denial of benefits, and failure to provide reasonable accommodations in federally funded programs or activities.

89B. Plaintiff alleges that the federally funded programs, reimbursement mechanisms, correctional-health contracts, and detention-related healthcare systems at issue may include billing, reimbursement, reporting, utilization-management, recordkeeping, or funding structures relevant to Plaintiff's claims and subject to discovery.

90. Plaintiff alleges Defendants discriminated against her by reason of disability and perceived disability, trauma-related limitations, or disability-related assumptions or stereotypes by subjecting her to punitive and degrading confinement conditions, failing to provide reasonable accommodations, failing to reasonably modify policies or practices, relying on disability-related assumptions or stereotypes, and denying Plaintiff meaningful access to safe, appropriate, and non discriminatory custodial, medical, mental-health, and court-related services and processes.

91. Plaintiff alleges Defendants failed to provide reasonable accommodation and equal access to services and programs.

92. As a direct result, Plaintiff suffered injury and damages.

## COUNT VII

### Monell Liability

### 42 U.S.C. § 1983

### Against City of West Palm Beach and Palm Beach County

93. Plaintiff incorporates Paragraphs 13A–13L, 18E–18I, 20A–20B, 24–43, 44–47B, and 48–50 as though fully set forth herein, solely for the purposes of this Count.

94. Plaintiff alleges her injuries were caused by municipal policies, customs, practices, failures to train, or failures to supervise.

95. Plaintiff alleges Defendants maintained inadequate policies concerning: arrest practices; disability accommodation; suicide-watch placement; detainee treatment; confinement conditions; and medical or mental-health intervention.

96. Plaintiff alleges policymakers knew or should have known of the substantial risk of constitutional injury resulting from these deficiencies.

97. Plaintiff alleges these policies and customs were moving forces behind the violations alleged. 98. As a direct result, Plaintiff suffered damages.

98A. On January 11, 2026, Plaintiff served written notice of her claims upon Defendant Palm Beach County, and on 01/11/2026, Plaintiff served written notice of her claims upon Defendant City of West Palm Beach, in each case by email, and on 01/11/2026, Plaintiff served written

notice of her claims upon the Florida Department of Financial Services, in compliance with section 768.28(6), Florida Statutes, as a condition precedent to Plaintiff's supplemental state-law tort claims. Plaintiff further alleges that notice concerning the events and claims at issue was provided to appropriate governmental representatives, including Palm Beach County officials and risk management personnel. Plaintiff further alleges that the federal claims asserted herein arise independently under federal law and do not depend upon the viability of any supplemental state

law claim or upon any state-law notice requirement. To the extent Defendants dispute compliance with any state-law notice requirement applicable to supplemental tort claims, Plaintiff reserves all arguments regarding compliance, substantial compliance, waiver, estoppel, tolling, and any other applicable defense or exception recognized by law.

98B. Plaintiff does not seek to impose municipal liability based solely on respondeat superior. Plaintiff alleges that the City and County are liable because their own policies, customs, failures to train, failures to supervise, and ratification were moving forces behind the violations alleged.

98C. The challenged practices include failure to train officers on enforcement of ambiguous injunction orders involving property access, failure to respond to disability-related medical emergencies before coercive enforcement, failure to supervise suicide-watch placement and conditions, failure to ensure disability accommodations in custody, and failure to oversee contracted medical and mental-health providers.

98D. Plaintiff alleges these failures were obvious and likely to result in constitutional injury to detainees and disabled persons, including Plaintiff.

98E. Plaintiff alleges Defendants failed to adequately train and supervise personnel concerning:

trauma-informed detention practices; suicide-watch placement criteria; disability accommodations; enforcement of injunction-related orders involving disputed residential access; and appropriate responses to medical-emergency accommodation requests before issuance or execution of coercive enforcement actions.

98F. Plaintiff alleges the need for training and supervision was obvious because officers, jail staff, and contracted medical providers routinely encounter disabled persons, detainees experiencing mental-health symptoms, ambiguous court orders, medical-emergency accommodation requests, and suicide-watch placement decisions. Plaintiff alleges the challenged conduct occurred across multiple governmental actors and departments, including law-enforcement personnel, detention personnel, medical personnel, mental-health personnel, supervisory personnel, and decision makers operating at different stages of Plaintiff's arrest, detention, suicide-watch placement, involuntary examination, and continued confinement. Plaintiff alleges the repeated nature of the decisions affecting Plaintiff supports a reasonable inference that the challenged conduct resulted from institutional practices, policies, customs, training deficiencies, or supervisory failures rather than a single isolated employee action. Plaintiff alleges that preservation, activation, deactivation, auditing, review, retention, and supervision of body-worn-camera recordings were governed by departmental policies and supervisory practices attributable to Defendant City of West Palm Beach. Plaintiff alleges the interruption of recording during a material investigative discussion is relevant to training, supervision, auditing, policy compliance, and investigative practices maintained by the City. Plaintiff alleges the challenged conditions were implemented pursuant to standardized suicide-watch procedures, housing practices, monitoring practices, or operational customs affecting detainees placed under suicide-watch status.

98G. Plaintiff alleges that many of the relevant policies, customs, training materials, supervision records, internal investigations, complaint histories, disciplinary records, suicide-watch protocols, disability-accommodation procedures, municipal practices, and policymaker communications are exclusively within Defendants' possession and control. Plaintiff therefore pleads the existence of such policies, customs, practices, failures to train, failures to supervise, and ratification upon information and belief based upon the events alleged herein and subject to confirmation through discovery.

98H. Plaintiff further alleges that the constitutional and statutory violations described herein were not isolated acts of a single employee but instead resulted from operational practices, training deficiencies, supervisory failures, disability-accommodation deficiencies, detention-related practices, suicide-watch procedures, investigative practices, information-sharing practices, and policymaking decisions attributable to Defendant City of West Palm Beach and Defendant Palm Beach County. Plaintiff alleges that multiple governmental actors participated in successive stages of the events described herein, including investigation, arrest, detention, medical screening, suicide-watch placement, disability-accommodation decisions, and continued confinement, and that the resulting injuries were caused or substantially contributed to by institutional practices rather than the independent actions of any single individual. Plaintiff further alleges that Defendants failed to implement adequate training, supervision, monitoring, review, auditing, and corrective measures reasonably necessary to prevent violations of constitutional rights, disability rights, and custodial protections. Plaintiff alleges that such failures were a moving force behind the injuries, loss of liberty, emotional distress, disability-related harms, reputational injury, and

other damages alleged in this Complaint. Many of the policies, customs, practices, training materials, supervisory records, complaint histories, investigative records, body-worn-camera records, disability-accommodation procedures, suicide-watch protocols, and internal communications relevant to these issues remain exclusively within Defendants' possession, custody, and control and are expected to be further revealed through discovery.

98I. Plaintiff alleges that many of the policies, training materials, body-worn-camera records, supervision records, internal investigations, suicide-watch procedures, disability-accommodation procedures, and policymaker communications necessary to plead municipal liability with greater specificity remain exclusively within Defendants' possession, custody, and control and are expected to be revealed through discovery.

## COUNT VIII

### False Imprisonment — Florida Common Law

**Against City of West Palm Beach, Palm Beach County, and Wellpath Liquidating Trust, solely as nominal defendant for Prepetition Wellpath's conduct**

99. Plaintiff incorporates Paragraphs 19–43, 48–50, and 98A as though fully set forth herein, solely for the purposes of this Count.

100. Defendants, individually and/or through their agents, employees, contractors, officers, or joint actors, intentionally restrained, confined, detained, and deprived Plaintiff of liberty through arrest, custodial detention, continued confinement, coercive control, and/or restrictions on Plaintiff's ability to leave or terminate the detention.

101. Plaintiff did not knowingly or voluntarily consent to the restraint, confinement, continued detention, or deprivation of liberty under the circumstances presented.

102. Plaintiff alleges the restraint and continued detention lacked lawful justification, exceeded lawful authority, and/or continued after Defendants knew or reasonably should have known that sufficient legal, factual, or procedural justification for continued confinement was absent, disputed, unsupported, or constitutionally deficient.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including  but not limited to loss of liberty, emotional distress, humiliation, mental anguish, reputational  harm, fear, anxiety, economic harm, and other compensable injuries recognized under Florida law.

## COUNT IX

**Negligent Hiring, Training, Supervision, and Retention — Florida Common Law**

**Against Palm Beach County and Wellpath Liquidating Trust, solely as nominal defendant for Prepetition Wellpath's conduct**

104. Plaintiff incorporates Paragraphs 13B–13L, 24–36, 40A–40F, 48–50, and 98A as though fully set forth herein, solely for purposes of this Count.

105. Plaintiff alleges Palm Beach County and Prepetition Wellpath owed duties to exercise reasonable care in the hiring, training, supervision, retention, auditing, monitoring, review, and oversight of personnel responsible for detainee housing, suicide-watch placement, mental-health evaluation, disability accommodation, medical assessment, custodial healthcare services, and

detainee safety.

106. Plaintiff alleges Defendants knew or reasonably should have known that personnel responsible for suicide-watch decisions, disability-accommodation decisions, mental-health assessments, medical evaluations, involuntary-examination referrals, and detainee treatment would routinely encounter detainees presenting trauma-related symptoms, mental-health concerns, medical vulnerabilities, accommodation requests, and circumstances requiring individualized assessment, professional judgment, and trauma-informed intervention.

107. Plaintiff alleges Defendants failed to implement, maintain, enforce, or adequately monitor training programs, supervision procedures, auditing mechanisms, review processes, corrective action measures, staffing safeguards, accountability systems, and quality-control measures reasonably necessary to ensure lawful and appropriate suicide-watch placement, trauma-informed care, disability accommodation, mental-health assessment, medical evaluation, and detainee treatment.

108. Plaintiff alleges that these institutional failures existed before and independent of Plaintiff's detention and created a foreseeable risk that detainees would be subjected to improper confinement conditions, unnecessary suicide-watch restrictions, inadequate accommodation, deficient clinical assessment, improper involuntary-examination referrals, avoidable trauma, and other foreseeable harms. Plaintiff further alleges that the challenged conduct involved implementation of operational practices and supervisory functions affecting detainees directly rather than protected legislative, judicial, or high-level discretionary policymaking functions.

109. As a direct and proximate result of Defendants' negligent hiring, training, supervision, retention, auditing, monitoring, review, and operational oversight practices, Plaintiff suffered loss

of liberty, emotional distress, psychological injury, humiliation, worsening trauma-related symptoms, disability-related injury, reputational harm, economic damages, and other injuries and damages alleged herein.

## COUNT X

### Negligence / Gross Negligence — Florida Common Law

**Against Palm Beach County and Wellpath Liquidating Trust, solely as nominal defendant for Prepetition Wellpath's conduct**

110. Plaintiff incorporates Paragraphs 24–43, 48–50, and 98A as though fully set forth herein, solely for the purposes of this Count.

111. Defendants owed Plaintiff duties arising from custodial, operational, supervisory, detention related, and safety-related responsibilities, including duties to exercise reasonable care in the confinement, monitoring, protection, supervision, handling, and treatment of individuals placed within their custody, control, or detention systems.

112. Defendants breached those duties by failing to provide safe, humane, reasonably secure, and constitutionally adequate confinement conditions, and by failing to implement, follow, supervise, and enforce appropriate operational safeguards, procedures, policies, staffing practices, monitoring practices, and protective measures under the circumstances presented.

113. Defendants further breached their duties by failing to adequately supervise, monitor, assess, evaluate, communicate regarding, document, protect, and appropriately respond to Plaintiff's condition, confinement circumstances, medical and mental-health needs, safety concerns,

disability-related limitations, and foreseeable risks of harm while Plaintiff remained within Defendants' custody, control, or operational authority.

114. Plaintiff alleges, in the alternative and primarily as to Prepetition Wellpath, that the challenged conduct constituted gross negligence in that it reflected conscious disregard, reckless indifference, and/or substantial disregard for foreseeable risks of harm, safety consequences, constitutional rights, disability-related needs, medical and psychological vulnerabilities, and custodial obligations owed to Plaintiff under the circumstances presented. Plaintiff further alleges that Defendants knew or reasonably should have known that the challenged conduct and conditions, including suicide-watch placement without adequate individualized justification, forced nudity, deprivation of normal clothing and bedding, exposure to unsanitary and degrading confinement conditions, failure to reasonably accommodate known disabilities and trauma-related limitations, inadequate evaluation and monitoring, and continued involuntary confinement without adequate factual support, created a foreseeable and unreasonable risk of physical injury, emotional distress, psychological harm, humiliation, loss of dignity, and deprivation of liberty. Plaintiff alleges that despite those known or obvious risks, Defendants failed to take reasonable corrective action and instead permitted, approved, implemented, continued, or failed to prevent the conduct and conditions described herein.

114A. As to Defendant Palm Beach County, Plaintiff asserts this Count as an ordinary-negligence claim within the scope of Florida's limited waiver of sovereign immunity under section 768.28, Florida Statutes, arising from the negligent performance of operational custodial functions. The gross-negligence allegations in Paragraph 114 are asserted in the alternative and are directed principally to the conduct of Prepetition Wellpath, a private contractor.

115. As a direct and proximate result of Defendants' negligent and grossly negligent conduct, Plaintiff suffered physical injury, emotional distress, mental anguish, humiliation, fear, loss of liberty, worsening trauma-related symptoms, economic damages, and other compensable injuries and damages recognized under Florida law.

## VI. DAMAGES

116. As a direct and proximate result of the acts, omissions, confinement, arrest-related actions, involuntary detention, suicide-watch placement, accommodation failures, and other conduct alleged herein, Plaintiff suffered loss of liberty, restrictions upon movement and autonomy, deprivation of bodily privacy and dignity, and interference with daily living, housing stability, family relationships, and personal security.

117. Plaintiff suffered severe emotional distress, humiliation, anxiety, fear, trauma-related injury, psychological harm, emotional anguish, sleep disturbance, panic symptoms, loss of sense of safety, and other mental and emotional suffering arising from the arrest, detention, confinement conditions, involuntary treatment-related actions, and related events alleged herein.

118. Plaintiff suffered worsening trauma-related symptoms and emotional injury, including exacerbation of preexisting trauma-related conditions, heightened anxiety, emotional dysregulation, nightmares, hypervigilance, fear associated with law-enforcement or custodial settings, and continuing emotional and psychological effects requiring ongoing support, therapy, monitoring, and treatment.

119. Plaintiff suffered reputational injury, humiliation, stigma, social harm, and damage to personal relationships arising from the arrest, detention, injunction-related allegations, suicide-

watch placement, involuntary mental-health-related designation, Baker Act confinement, and related public or institutional actions alleged herein.

120. Plaintiff suffered economic losses and financial damages, including medical-related expenses, treatment-related expenses, transportation and housing-related losses, loss of income or earning opportunities, out-of-pocket expenses, costs associated with defending proceedings, and other compensatory losses recoverable under federal and Florida law.

121. Plaintiff alleges continuing and future damages arising from the events alleged herein, including continuing emotional distress, trauma-related injury, medical and therapeutic needs, reputational harm, financial losses, disability-related impacts, and other compensatory, declaratory, equitable, and prospective injuries and damages recoverable under applicable law.

122. Plaintiff alleges certain conduct described herein was undertaken intentionally, recklessly, maliciously, or with deliberate indifference to federally protected rights, and Plaintiff reserves the right to seek punitive damages to the extent legally permitted against any defendant not immune from such relief.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Melanie M. Beres respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A. Enter judgment in Plaintiff's favor on all claims permitted by law and supported by the evidence;

B. Award compensatory damages in an amount to be determined at trial for loss of liberty, emotional distress, trauma-related injury, humiliation, reputational harm, disability-related injury,

medical and therapeutic expenses, financial losses, and all other damages recoverable under federal and Florida law;

C. Award nominal damages for violations of constitutional and federally protected rights;

D. Preserve Plaintiff's right to seek punitive damages to the extent legally permitted and only against any Defendant not immune from such relief under federal or Florida law;

E. Award declaratory relief declaring that the acts, practices, policies, customs, conditions, failures  to accommodate, and conduct alleged herein violated Plaintiff's rights under the Constitution and  laws of the United States;

F. Award prospective injunctive relief to the extent authorized by law, including relief directed toward reasonable accommodation procedures, trauma-informed detention practices, constitutionally adequate custodial conditions, and other appropriate non-monetary relief necessary to prevent continuing or future violations;

G. Award reasonable costs, litigation expenses, and attorney's fees to the extent authorized under 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, or other applicable provisions of law;

H. Award pre-judgment and post-judgment interest as permitted by applicable law;

I. Grant such additional legal, equitable, declaratory, injunctive, or other relief as the Court deems just, proper, and authorized under the Federal Rules of Civil Procedure, federal civil-rights law, and applicable Florida law;

J. Determine and liquidate the amount of Plaintiff's qualifying prepetition claims arising from Prepetition Wellpath's alleged conduct, with the Wellpath Liquidating Trust named solely as nominal defendant and with any enforcement or distribution governed by the confirmed Plan,

Trust Distribution Procedures, and applicable bankruptcy orders;

K. Limit any recovery attributable to Prepetition Wellpath to distributions available under the Wellpath Liquidating Trust and any applicable insurance proceeds separately authorized by the Bankruptcy Court, without seeking collection from discharged debtors, post-restructuring debtors, or their assets contrary to the Plan or discharge injunction; and

L. Preserve Plaintiff's right to seek appropriate relief in the Bankruptcy Court concerning insurance coverage, self-insured retention, claim allowance, Trust administration, or interpretation and enforcement of the Plan.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable as a matter of right pursuant to the Seventh Amendment to the United States Constitution, Federal Rule of Civil Procedure 38, and all other applicable provisions of law.

## VERIFICATION

I, Melanie M. Beres, declare under penalty of perjury under the laws of the United States pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action and have read the foregoing Complaint and know the contents thereof.

I declare that the factual allegations contained in this Complaint are true and correct to the best of my personal knowledge, and that allegations stated upon information and belief are believed by me to be true based upon reasonable inquiry, review of records, witness observations, public records, and information obtained from reliable sources.

I further declare that this Verification is made in good faith for the purpose of seeking redress for alleged violations of my rights under the Constitution and laws of the United States.

I further state that allegations asserted upon information and belief are based upon reasonable inquiry and information reasonably believed likely to be supported through admissible evidence or discovery.

Date: 7/20/26

Respectfully submitted,

Melanie M. Beres
Plaintiff, Pro Se
Contact Number: +1-414-916-8755
Email: savetheyouth2025@gmail.com
9418 North Green Bay Road, Apt 328, Brown Deer, Wisconsin, 53209

## INCORPORATION OF PREVIOUSLY FILED EXHIBITS

Plaintiff references previously filed exhibits and evidentiary materials solely as evidentiary support for the factual allegations asserted in this Complaint. Plaintiff does not incorporate prior pleadings, prior allegations, prior arguments, or dismissed claims into this pleading or into any count.

Plaintiff further states that previously filed exhibits, records, appellate materials, medical records, affidavits, transcripts, and related evidentiary materials remain relevant to the factual allegations, procedural history, damages allegations, and requests for relief asserted herein to the extent consistent with this pleading and Federal Rule of Civil Procedure 10(c).

To the extent the Court requires reattachment of any specific exhibit or supporting material, Plaintiff respectfully requests leave to supplement or refile such materials as necessary.

## CERTIFICATE OF SERVICE

I hereby certify that on _July 2?, 2026_ , a true and correct copy of the foregoing filing and attached materials was served upon all Defendants or their counsel of record by email, the methods required by the Federal Rules of Civil Procedure and applicable law.

Respectfully submitted,

Melanie M. Beres
Plaintiff, Pro Se

Melanie M. Beres
9418 N. Green Bay Rd,
Apt 328,
Brown Deer, WI, 53209.

9589 0710 5270 4210 7881 20

RETURN R
REQUES


RETURN RECEIPT
REQUESTED

Paul G. Rogers Federa
and
U.S. Courthouse
701 Clematis St
Room 202
West Palm Beach, FL, 3

PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED

RETURN RECEIPT
REQUESTED